**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **Quinton Brown, Jason Guy,** ) | |
| **Ramon Roane, Alvin Simmons,** ) | |
| **Sheldon Singletary, Gerald White** ) | |
| **and Jacob Ravenell** ) | |
| **Individually and on behalf of the class** ) | |
| **they seek to represent,** ) | **Civil Action No.: 2:04-22005-CWH** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **Nucor Corporation and** ) | |
| **Nucor Steel Berkely** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

Facts and Procedural History

The plaintiffs bring this action under Title VII and 42 U.S.C. § 1981 against Nucor Corporation and Nucor Steel Berkeley (collectively referred to as "Nucor") based on alleged discrimination occurring at Nucor's Berkeley plant ("the plant") located in Huger, South Carolina.

The plant's operations are divided into five departments. The relevant departments are as follows: (1) beam mill, (2) hot mill, (3) melt shop, (4) cold mill, and (5) shipping. Each production department consists of unique job types that have different pay levels and skill requirements. Some of the jobs require special training. When a position in a department becomes available, the job is posted on the plant's e-mail system, which is accessible to all employees in the plant. Employees from different departments can bid on jobs in other departments.

Each department has a department manager. The general manager of the plant supervises the department manager. The department manager supervises the employees within the department. The departments have supervisors and crew leaders. The parties agree that the departments follow their own procedures when filling a job position. The evidence demonstrates that numerous decision makers are involved with promotions in the departments.

Nucor has no plant-wide promotion procedure. Rather it allows department managers to create their own promotion procedure. Testimony from four department managers and one supervisor reveal the following similarities in each department's promotion procedures: (1) the department managers and supervisors list the training requirements for every job posted, (2) for the majority of jobs posted, training requirements are the only objective criteria required to obtain a job,[1] (3) decision makers rely on subjective criteria, such as attitude, teamwork, and willingness to learn, to select applicants, (4) an objective system to evaluate applicants for jobs is lacking, (5) the majority of managers and supervisors are white, and (6) the decision makers for promotions are different for each department and sometimes are different within a department.[2]

On August 25, 2004, the plaintiffs, joined by other employee-plaintiffs working at Nucor's plants in other states, filed a complaint in the United States District Court for the Eastern District of Arkansas. The district court subsequently severed the case, and it transferred the claims brought by the seven plaintiffs employed at the plant in South Carolina to this Court.

---

[1] John Bell, the former department manager for the melt shop, stated that applicants for high level promotions were administered a test. An applicant with the highest score would be selected. This is the only evidence of the use of a test to select an applicant for a job.

[2] Sean McCarthy testified that supervisors and lead men selected applicants for promotions to lower level jobs within the beam mill and the department manager and supervisor selected applicants for higher level jobs within the beam mill.

On January 28, 2005, the plaintiffs filed a third amended complaint alleging that Nucor has engaged in a systematic pattern and practice of racial discrimination in employment opportunities. The amended complaint alleges class discrimination on behalf of all African-American employees employed at the plant. The plaintiffs seek a permanent injunction, back pay, compensatory and punitive damages, and attorney's fees.

On February 25, 2005, the plaintiffs filed a motion to compel records on every hourly employee who worked at the plant from 2000 to 2005 and information on every job posted during the same time period. The plaintiffs claimed they needed the discovery to prepare statistics to support their individual and class claims. Nucor objected to the requests arguing that the requests were too broad. Nucor agreed to give the plaintiffs information on jobs that the plaintiffs bid on, jobs that were similar in pay, grade, and experience as the jobs the plaintiffs bid on, employees who bid on the similarly situated jobs, jobs filled by managers and supervisors over the plaintiffs, and policies and procedures existing in the four production departments where the named plaintiffs sought positions. The four production departments are the hot mill, cold mill, beam mill, and melt shop.

On March 29, 2005, Magistrate Judge George C. Kosko denied the motion. The plaintiffs appealed the decision to this Court. On March 30, 2006, the Court issued an order denying the motion to compel. The Court held that the employee information that Nucor had agreed to provide would allow the plaintiffs to calculate reliable statistics to support their individual and class claims of discrimination.

On May 7, 2007, the plaintiffs filed a motion for class certification. The plaintiffs seek to represent the following class:

> All African-Americans who are or were employed at the Nucor Berkeley manufacturing plant in Huger, South Carolina at any time since December 2, 1999 in the beam mill, hot mill, melting, maintenance and shipping departments (hereafter "production departments") or, in the alternative, for such separate classes or subclasses of such persons as may be appropriate under the Federal Rules of Civil Procedures.

The plaintiffs raise the following claims on behalf of the class: (1) A pattern or practice of disparate treatment against African-American employees with respect to promotion opportunities at the plant, (2) Nucor's promotion procedure, which allows white managers and supervisors to use subjective criteria to promote employees, has a disparate impact on African-American employees who apply for promotions, and (3) Nucor requires African-American employees to work in a plant-wide hostile work environment. Nucor has filed an opposition to the motion. This matter is ready for disposition.

I.      Motion for class certification

To represent a class, a plaintiff carries the burden to satisfy the criteria set forth in Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Lott v. Westinghouse Savannah River Co., 200 F.R.D. 539, 550 (D.S.C. 2000). The Court will address the requirements set forth in Rule 23(a) first.

Rule 23(a) permits one or more members of a class to sue as a class representative only if:

> (1)   the class is so numerous that joinder of all members is impracticable,
> (2)   there are questions of law or fact common to the class,
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

The last three criteria: (1) commonality, (2) typicality, and (3) adequacy of representation ensure that the plaintiffs claim and the class claim are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence." General Telephone Company v. Falcon, 457 U.S. 147, 158 n. 13 (1982).  The numerosity requirement "prevents members of a small class from being unnecessarily deprived of their rights without a day in court."  7A Wright, Miller, and Kane, Federal Practice and Procedure, 1762, p. 176 (3d Ed. 2005).  The Court will first determine whether the plaintiffs have satisfied the commonality, typicality, and adequacy of representation criteria.

    1.    Whether there are questions of law or fact common to the class

The plaintiffs bring three claims they contend are common to the entire class: (1) pattern or practice of discrimination at the plant, (2) Nucor's promotion procedures have a disparate impact on African-Americans, and (3) a hostile work environment exists at the plant.

        A.  Pattern or practice of discrimination

An employee may bring a claim that an employer has a pattern or practice of discrimination on behalf of a class that are either victims or potential victims of the discriminatory practice.  Teamsters v. United States, 431 U.S. 324, 360 (1977).   To prove that a pattern or practice of discrimination exists, a plaintiff must demonstrate more than the mere occurrence of isolated or accidental or sporadic discriminatory acts; the plaintiff must demonstrate that discrimination is the employer's standard operating procedure.  Id. at 336.  To demonstrate that the class shares a common question of fact or law, a plaintiff must demonstrate that the alleged pattern or practice affects the class in common ways.  Stastny v. Southern Bell Telephone and Telegraph Co., 628 F.2d 267, 277 (4th Cir. 1980).  A pattern or practice claim is typically proven by statistical evidence bolstered by anecdotal evidence of discrimination. Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986).

The plaintiffs allege that the class shares a common factual issue of whether Nucor has a pattern or practice of managers using subjective criteria to reject African-American employees for promotions at the plant.

Subjectivity in employment decisions is a badge of discrimination. Stastney, 628 F.2d at 279. However, subjectivity in decision making alone is insufficient to prove a common question of fact among a class subject to the decision making. Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1231 (9th Cir. 2007). The plaintiffs must present additional proof of the existence of a common question of fact.

At the class certification stage, a district court must take a close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification; such findings can be necessary even if the issues tend to overlap into the merits of the underlying case. Thorn v. Jefferson-Pilot Life Insurance Co., 445 F.3d 311, 319 (4th Cir. 2006). The likelihood of success on the merits is not relevant to the issue of whether certification is proper. Id.

The plaintiffs attempt to prove the existence of a pattern or practice that applies to all class members with statistical evidence and direct evidence. The plaintiffs have presented statistical evidence of a disparity in African-American promotion rates at the plant. The statistics allegedly eliminate the possibility that African-Americans' lack of training and discipline caused the disparity and isolates the subjectivity as the cause of the disparity.

The plaintiffs present five statistical comparisons they allege prove a disparity in African-American promotion rates. The plaintiffs use the percentage of African-Americans living in the area surrounding the plant in 2000 who were qualified for the skill positions in the

plant as a labor pool to calculate disparities in African-American promotion rates. The plaintiffs measure the significance of the disparity using the 80% rule. The plaintiffs also estimate the percentage of African-Americans who applied for promotions between December 1999 and January 2001.

Nucor argues that statistics using skilled African-Americans outside of the plant as the qualified labor pool are unreliable because these individuals did not bid on jobs at the plant. Nucor contends that the statistics should use promotion data occurring from 2004 to 2006. Nucor argues that the Court should measure disparity using the standard deviation analysis. Finally, Nucor contends that statistics based on the plaintiffs' estimated promotion data for the time period between December 1999 and 2001 are unreliable.

The plaintiffs' first comparison is of the average percentage of African-Americans occupying skill positions in the plant's production departments from 2000 to 2004 and the percentage of African-Americans living in the area surrounding the plant in 2000 who were qualified for the skilled positions at the plant. The percentage of qualified African-Americans in the community was 38.2%, and the average percentage of African-Americans occupying skilled positions in the plant from 2000 to 2004 was 13.42%. The plaintiffs allege the disparity demonstrates an underutilization of African-Americans in the skill positions at the plant.

The second comparison is the same except the time period extends to 2006. The plaintiffs allege that the comparison demonstrates the disparity continues to 2006.

The third is a comparison of the percentage of African-American individuals living in the area surrounding the plant in 2000 who were qualified for skill positions in the plant and the percentage of African-Americans who bid on promotions in the plant between 2001 and

December 2003. The percentage of skilled African-Americans living in the surrounding area was 38.2% and the percentage of African-Americans who bid on promotions was 16.0%. The plaintiffs allege that the comparison demonstrates a disparity in African-American applications for jobs in the plant.

The fourth is a comparison of the estimated percentage of African-Americans who bid on promotions between December 1999 and December 2003 and the estimated percentage of African-Americans who received promotions for the same time period. Nucor does not have promotion records dating before January 2001. Therefore, the plaintiffs searched through personnel files provided by Nucor and located twenty-seven positions filled between December 1999 and January 2001. The plaintiffs estimated that the percentage of African-Americans who bid on the twenty-seven jobs was the same as the average percentage of African-Americans who bid on jobs from 2001 to December 2003. The resulting estimated comparison reveals that 19.24% of applicants were African-American and 7.94% of applicants selected for promotion were African-American. The plaintiffs allege that this disparity demonstrates discrimination against African-American employees.

The fifth is a comparison between the percentage of qualified African-Americans living in the surrounding community in 2000 and the estimated percentage of African-Americans who received promotions from December 1999 to December 2003. The percentage of qualified African-Americans living in the surrounding area was 38.2% and the percentage of African-Americans selected for promotions was 7.9%. The plaintiffs allege that the disparity demonstrates discrimination in Nucor's promotion practices.

The statistics are based on assumptions of the numbers and skills of the African-

Americans living in the surrounding area and an estimate of the actual number of African-Americans who bid on promotions in the plant.  These assumptions may be reasonable and the statistics based thereon may be relevant to prove discrimination at the plant.  However, the necessity of the assumptions diminishes their probative value.   Nucor provided the plaintiffs with records of promotions occurring in the plant from January 2001 to December 2003.[3]  Statistics based on actual data is more probative than statistics based on assumptions.  Consequently, the Court relies on statistics resulting from an analysis of this data.

The data demonstrates a disparity resulting in 1.48 standard deviations, which is a statistically insignificant disparity in the African-American promotion rates occurring during the three year period.  The most reliable method to measure statistical results is the standard deviation analysis.  The larger the disparity the larger the standard deviation.  A disparity resulting in a standard deviation higher than 2.0 is entitled to a presumption of discrimination.  Hazelwood School District v. United States, 433 U.S. 299, 309 n. 14 (1977).  A disparity resulting in a standard deviation lower than 2.0 is insignificant because chance could have caused the disparity.

The plaintiffs argue that the Court should apply the 80% percent rule to measure the statistical results.  The 80% rule measures the percentage of African-Americans promoted against the percentage of whites promoted.  If the percentage of African-Americans promoted is less than 80% of the percentage of whites promoted, then a court may infer discrimination.  Although the 80% rule is an accepted method to measure statistical results, the more reliable method is the standard deviation analysis.  Moultrie v. Martin, 690 F.2d 1078, 1082 (4th Cir.

---

[3] The plaintiffs have not requested additional evidence to compile reliable statistics.

1982). Consequently, the Court relies on the standard deviation analysis to measure the disparity in African-American promotion rates. Because the disparity results in less than 2.0 standard deviations, the statistics are insignificant.[4]

The plaintiffs contend that the Court must use a pool of qualified African-Americans to account for potential applicants who were discouraged by Nucor's discriminatory policies and did not apply for promotions. However, the most probative evidence to demonstrate whether white managers and supervisors do not promote African-Americans at a similar rate of white employees are statistics comparing actual applicants.

In addition, the plaintiffs indicate that from 2000 to 2004 the average percentage of African-Americans working at the plant was 11.13% and from 2001 to December 2003 16% of applicants for promotions were African-Americans. The comparison reveals that more African-Americans than expected applied for promotions, which cuts against the plaintiffs' contention that Nucor's procedures discouraged African-American from applying for promotions. The statistics do not reveal a pattern or practice of discrimination occurring in the plant.

The plaintiffs also present direct evidence to support their claims of a pattern or practice of discrimination at the plant. The plaintiffs present sixteen declarations and affidavits of African-American employees to prove the existence of a common practice of employment discrimination at the plant: (1) Ramon Roane, (2) Quinton Brown, (3) Alvin Simmons, (4) Jacob Ravenell, (5) Gerald White, (6) Sheldon Singletary, (7) Jason Guy, (8) Walter Cook, (9) Eric

---

[4] Nucor argues that the Court should consider promotion data occurring after the lawsuit was filed. However, post-suit promotion data is entitled to minimal weight. Holsey v. Armour & Co., 743 F.2d 199, 215 n. 5 (4th Cir. 1984). Therefore, the Court holds that the most reliable statistics are those gathered from promotion data occurring before this action was filed in December 2003.

Conyers, (10) Aaron Butts, (11) Jerry Nick, (12) Ken Hubbard, (13) Robyn Spann, (14) Earl Ravenell, (15) Bernard Beaufort, and (16) Byron Turner. The first seven individuals listed are the named plaintiffs.

A review of this evidence does not indicate a discernable pattern or practice of discrimination. The vast majority of specific allegations of white supervisors discriminating against African-American employees arise in the beam mill. Of the sixteen declarations, only Singletary and Beaufort make specific allegations of a manager or supervisor treating African-American employees unfairly in a department besides the beam mill. The plaintiffs must demonstrate that they and the class were subject to a pattern or practice of managers and supervisors using subjective criteria to reject African-American employees. To do so, the plaintiffs must demonstrate more than sporadic or isolated acts. Teamsters 431 U.S. at 336. The plaintiffs do not present evidence of a pattern of discrimination in the four production departments.

The plaintiffs statistical evidence does not present a disparity in African-American promotion rates. In addition, the plaintiffs fail to present direct evidence of plant-wide discrimination. The Court is not convinced that a common question of law or fact exists among the class. Therefore, the Court holds that the plaintiffs fail to demonstrate a common question of fact regarding the class pattern or practice claim.

    B. Disparate impact

The plaintiffs contend that Nucor's subjective promotion procedure has a disparate impact on African-American employees.

A disparate impact claim alleges that a facially neutral employment practice has a

disparate impact on a class. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 990 (1988). A plaintiff may bring a claim that a subjective promotion procedure has a disparate impact on a class of employees. Id. at 994. The plaintiff must identify the specific employment practice that is challenged and prove causation. Id. A disparity and causation is proven with statistical evidence. The statistics must reveal disparities that are sufficiently substantial to raise an inference of causation. Id. at 995.

The plaintiffs have presented evidence that the four production departments rely on subjective criteria to promote employees. However, as explained above, the statistics based on actual data do not demonstrate a disparity in African-American promotion rates at the plant. The plaintiffs fail to demonstrate that the class shares common issues of fact or law regarding the disparate impact claims.

### C. Hostile work environment

The plaintiffs contend that a plant-wide hostile work environment exists. A work environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment. Harris v. Forklift Systems, Inc. 510 U.S. 17, 21 (1993). To determine whether an actionable hostile work environment exists, a court should look to all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

The plaintiffs have presented plant-wide racist acts potentially experienced by every African-American employee working at the plant when the acts occurred. These acts include:

(1) racist e-mails, (2) display of the confederate flag, and (3) racist remarks over the plant radio.

The plant consists of five production departments. The record reveals that the production departments have their own bathrooms, break rooms, and administrative offices. The record also reveals that employees working in one department do not ordinarily commingle with employees working in another department. The plant's production departments can be classified as separate "environments." A class members claim of a hostile work environment in the hot mill will vary significantly from a class member's claim of a hostile work environment in the beam mill. Although the abovementioned acts were arguably experienced by all African-American employees working at the plant, they are only part of a class member's hostile work environment claim. To determine whether an actionable hostile work environment exists, a court does not limit a claim to discrete acts; rather, it should look to all of the circumstances. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). A class member's hostile work environment claim in the hot mill is factually distinct from a class member's claim in the cold mill. The hostile work environment claim does not raise an issue of fact or law common to the entire class. *See* Broussard v. Meineke Discount Mufflers Shops Inc., 155 F.3d 331, 340 (4th Cir. 1998)(holding that the class did not share a common question of fact or law because the class members entered into separate contracts and proof that defendant breached one class member's contract was not proof that it breached all of the class members' contracts.).

  2.  Whether the plaintiffs' individual claims are typical of the class claims

    A.  Disparate treatment

Disparate treatment is purposeful discrimination. Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986). The plaintiffs allege that Nucor's managers discriminated against

them with respect to promotions. A plaintiff may prove a prima facie case of intentional discrimination using either direct evidence or indirect evidence using the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973). McDonnell Douglas allows a plaintiff to establish a prima facie case of intentional discrimination by proving that: (1) the plaintiff belongs to a minority; (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite the plaintiff's qualifications, the plaintiff was rejected, and (4) that after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. Id. After alleging a prima facie case, an employer must articulate a non-discriminatory reason for rejecting the plaintiff. Id. The plaintiff may then prove that the employer's non-discriminatory reason is pretext. Id. The typical method to prove pretext is through evidence proving that the employer's rejection of the plaintiff conformed to a pattern or practice of discrimination. Id. A pattern or practice of discrimination is proven through statistical evidence bolstered by anecdotal evidence. Ardrey, 798 F.2d at 683.

The plaintiffs' individual claims require them to prove that they were qualified for the jobs they applied for and that the jobs were awarded to a less qualified white employee. Nucor will then articulate a non-discriminatory reason for rejecting the plaintiffs.

As explained above, the plaintiffs have not demonstrated a pattern or practice of discrimination at the plant. The plaintiffs' attempt to prove pretext is not typical of the other class members. Consequently, the plaintiffs' claims are not typical of the other class members' claims.

      B. Disparate impact

The plaintiffs contend that Nucor's subjective promotion procedures have a disparate impact on African-American employees. To prevail on this claim, the plaintiffs must identify the subjective employment practice and offer statistical evidence that the employment practice has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Watson, 487 U.S. at 994.

The plaintiffs will rely on statistical evidence to prove a disparity in African-American promotion rates and to prove, by eliminating objective criteria as the cause of such disparity, that subjective criteria used in each department caused the disparity.

The burden then shifts to Nucor to produce evidence either that the practice of using subjective criteria is a business necessity or that the subjective criteria does not cause the disparate impact. Watson, 487 U.S. at 997. The plaintiff may rebut a showing of business necessity by demonstrating a business practice with a less discriminatory effect. Id.

The plaintiffs fail to demonstrate a disparity in African-American promotion rates at the plant. Therefore, the plaintiffs' disparate impact claims are not typical of the class claims.

    C. Hostile work environment

Six of the plaintiffs worked in the beam mill. The seventh plaintiff worked in the hot mill. The plaintiffs will attempt to prove that the working environment in the beam mill and hot mill was hostile to African-American employees. The plaintiffs do not have an incentive to prove the environment in the cold mill, melt shop, and the rest of the plant was hostile to African-American employees. The plaintiffs' hostile work environment claims are not typical of the class members working in the unrepresented departments. Therefore, the plaintiffs fail to satisfy the typicality requirement.

3.    Adequacy of representation

Essential components of adequate representation are that the representatives' attorney is qualified and that the representative does not have an interest antagonistic to the remainder of the class. Windham v. American Brands, Inc., 68 F.R.D. 641, 649 (D.S.C. 1975)(Chapman, J.).

A.  Competency of attorneys

Nucor does not challenge the competency of the plaintiffs' attorneys.

B.  Antagonistic interests

a.  Pattern or practice and disparate impact claims

Because the class does not have a common claim and the plaintiffs' claims are not typical of the class claims, the plaintiffs are not adequate representatives of the class.

Nucor also argues that the plaintiffs and class members bid on the same jobs, and the plaintiffs have conflicts of interests with the class members.

The plaintiffs seek an injunction to require Nucor to, *inter alia*, restore the plaintiffs and the class they seek to represent to the jobs they would be occupying but for Nucor's discriminatory practices.[5]  Amended Complaint, ¶ h, p. 25.  The plaintiffs and other African-American employees at the plant bid on the same jobs.  The plaintiffs' request to enjoin Nucor to give them the jobs they bid on conflicts with the plaintiffs' duty to provide a class member the same remedy.  The plaintiffs do not refute this argument.  The plaintiffs have conflicts of interests with the class members and are not adequate class representatives.  *See* General Telephone Company of the Northwest v. EEOC, 446 U.S. 318, 331 (1980)(a class representative cannot represent class members with competing remedial interests).

---

[5] The plaintiffs do not distinguish the plaintiffs who no longer work for Nucor.

### b. Hostile work environment

The Court can discern no conflicts of interests among the plaintiffs and class members regarding the hostile work environment claims.

4.  The class is so numerous joinder is impracticable.

No mechanical test exists to determine whether the numerosity requirement has been satisfied. Kelley v. Norfolk & W.Ry. Co., 584 F.2d 34, 35 (4th Cir. 1978). A court should resolve the issues in light of the circumstances and facts of a particular case. Id. Factors including the nature of the action, the size of the individual claims, and the location of the members of the class may contribute to a court's decision. 7A Wright, Miller, and Kane, Federal Practice and Procedure, 1762, p. 206-207 (3d Ed. 2005).

### A. Promotion claims

The plaintiffs argue that every African-American employee at the plant is a member of a class bringing promotion discrimination claims. The plaintiffs estimate that over 100 African-American employees worked at the plant from 1999 to 2004. Nucor contends that only African-American employees who bid on promotions are eligible members of the class, and because only 19 black employees bid on similar jobs from 2001 to 2006, the plaintiffs fail to satisfy the numerosity requirement.

A plaintiff denied a promotion based on a discriminatory employment practice may represent employees who would have applied for a promotion but for the discriminatory practice. Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984). In class actions based on pattern or practice and disparate impact claims, the trier of fact determines whether the employer has discriminated against the class, and then in a separate post-liability proceeding, class members

-17-

prove their entitlement to relief.  Teamsters, 431 U.S. at 369.  In class actions alleging promotion discrimination, potential applicants are eligible to prove that they would have applied for a promotion but for the discriminatory practice.  Id.  Therefore, non-applicant African-American employees are proper class members.

Ninety-four African-American employees worked at the plant from 2001 to 2004.[6] Nucor does not dispute that certifying a class consisting of all of the African-Americans who worked at Nucor in the past five years would satisfy the numerosity requirement. The number of class members satisfies the numerosity requirement.

### B.  Hostile work environment claims

The plaintiffs claim the existence of a plant-wide hostile work environment.  The existence of such an environment would involve all of the African-Americans employees at the plant.  The number of African-Americans employed at the plant satisfy the numerosity requirement.

### Conclusion

The plaintiffs attempt to bring discrimination claims of a pattern or practice, disparate impact, and hostile work environment on behalf of every African-American employee who has worked at the plant since 1999.  The plaintiffs have presented evidence that a class consisting of all African-Americans who have worked at the plant since 1999 satisfies the numerosity requirement.  However, the plaintiffs fail to demonstrate that the class claims raise questions of fact or law common to the entire class and that the plaintiffs' claims are typical of the class

---

[6] The estimate is based on EEO-1 reports.  EEO-1 reports are completed by the employer and indicate the racial composition of an employer's work force.

claims. In addition, the plaintiffs' have a conflict of interests with class members competing for the same jobs as the plaintiffs. Accordingly, the Court denies the motion for class certification. Because the plaintiffs fail to satisfy the commonality and typicality requirements, the Court will not determine whether the class satisfies the remaining requirements of Rule 23(b).

      **AND IT IS SO ORDERED.**

                                                                                                                                    */s/ C. Weston Houck*
                                                                                                                                 _____

August 7, 2007                                                  **C. WESTON HOUCK**
Charleston, South Carolina                        **UNITED STATES DISTRICT JUDGE**