**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **QUINTON BROWN, JASON GUY,** | ) | |
| **RAMON ROANE, ALVIN SIMMONS,** | ) | |
| **SHELDON SINGLETARY, JACOB** | ) | |
| **RAVENELL and GERALD WHITE** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **V.** | ) | **Case No. 2:0422005-12** |
| | ) | |
| **NUCOR CORPORATION and** | ) | |
| **NUCOR STEEL BERKELEY** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**NUCOR CORPORATION AND NUCOR STEEL BERKELEY MOTION TO EXCLUDE**
**PLAINTIFFS' EXPERT WITNESSES**

Pursuant to Federal Rules of Evidence 702, 403, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and all other applicable substantive provisions governing the admissibility of expert testimony in federal court proceedings, Defendants Nucor Corporation ("Nucor") and Nucor Steel Berkeley ("NSB") (collectively "Defendants") hereby move to exclude the testimony of Plaintiffs' proposed experts: Edwin L. Bradley, Ph.D., Liesl M. Fox, Ph.D.; and Michael R. Buckley, Ph.D.

**SUMMARY OF ARGUMENT**

Plaintiffs' employment discrimination statistics experts (Bradley and Fox)[1] offer opinions that are, by their own admissions, based upon data which is incomplete and/or insufficient, speculative, and with no ties to the facts of this case. The Court should exercise it's gatekeeping

---

[1] Drs. Bradley and Fox's opinions are outlined in their Report "Expert Report Workforce Distribution and Selection Process at Nucor Steel Berkeley authored by Liesl M. Fox, Ph.D and Edwin L. Bradley, Ph.D, attached hereto as Exhibit 1.

obligation to prevent the jury from being exposed to unreliable assertions presented under the guise of expert opinion testimony.

The analyses and conclusions offered by Drs. Bradley and Fox[2] do not satisfy Rule 702, *Daubert*,[3] or its progeny. They are not qualified to render expert opinions in employment discrimination. Their methodology and conclusions are unreliable and irrelevant because they are based upon speculative data and riddled with inaccuracies, errors, and inconsistencies. Drs. Bradley and Fox create data for the period of 1999-2000 and completely ignore available data from 2003 to the present.[4] Drs. Bradley and Fox create an illusion of disparate impact by drawing inferences from hypothetical assumptions that are invalid, untrustworthy, and use methodology that cannot properly be applied to the facts in issue. Further, Drs. Bradley and Fox resort to extraneous comparisons of the racial composition of NSB employees to the residents in surrounding counties; however, only current employees are eligible to bid on open jobs at NSB[5] and the census data of residents of the surrounding counties has no bearing whatsoever on the internal promotions process at NSB. Drs. Bradley and Fox's opinions also are inadmissible under Rule 403 because they will confuse and mislead the jury. Any probative value of those opinions is outweighed by their significant prejudice. Therefore, this Court should exclude Drs. Bradley and Fox's opinions.

Dr. Buckley proposes to offer expert testimony that is critical of the selection process utilized by NSB in promotions. His analysis and conclusions are likewise unreliable. He is not an expert in the field of employment discrimination, his conclusions and opinions are based upon

---

[2] Dr. Fox consulted with Dr. Bradley and wrote the Report, and Dr. Bradley reviewed, endorsed and agrees with the processes, analyses and conclusions of the Report – see the Deposition of Edwin L. Bradley ("Bradley Depo.") at pp. 26-30, attached hereto as Exhibit 2.
[3] *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993).
[4] *See* the Deposition of Liesl Fox ("Fox Depo."), attached hereto as Exhibit 2, p. 194, l. 14—p. 203, l. 20; see also Report of Finis Welch ("Welch Report"), p. 5-6. attached hereto as Exhibit 4.
[5] *See* Welch Report, p. 6, attached hereto as Exhibit 4.

Chas 490690v2

incomplete and insufficient data and are irrelevant to the issues of this case.  For these reasons, the Court should also exclude the testimony of Dr. Buckley.

## LEGAL STANDARD

The Federal Rules of Evidence provide: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert witness, who is qualified by knowledge, skill, experience, training or education, may testify as to his or her opinions within that area of expertise." Fed.R.Evid. 702.  Plaintiffs, as the proponents of Drs. Bradley, Fox, and Buckley's testimony, bear the burden of proving by a preponderance of the evidence that these experts' testimony meets each of Rule 702's requirements. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).  Proposed expert testimony is admissible only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.  Daubert,* 509 U.S. 589.  In *Daubert,* the Supreme Court set forth an illustrative, non-exhaustive list of factors that may be considered by a court when determining whether the expert testimony is scientifically relevant and reliable, and the Fourth Circuit has adopted this standard.  *United States v. Powers,* 59 F.3d 1460, 1470-71 (4th Cir. 1995). The factors that the District Court should consider when evaluating scientific relevance and validity are: "(1) [w]hether the theory or technique used by the expert can be, and has been, tested; (2) [w]hether the theory or technique has been subjected to peer review and publication; (3) [t]he known or potential rate of error of the method used; and (4) [t]he degree of the method's or conclusion's acceptance within the relevant scientific community." *Id.* at 1471. "Therefore, a trial judge, faced with a proffer of expert scientific testimony, must conduct 'a preliminary

assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Smith & Nephew, Inc.,* 259 F.3d 199 (quoting *Daubert,* 509 U.S. at 592-93).

Expert testimony that is not firmly "grounded in reliable scientific knowledge" or "not tied to known scientific conclusions based on research or studies" is inadmissible as a matter of law. *Cooper v. Lab. Corp. of Am. Holdings, Inc.,* 181 F.R.D. 312, 316 (D.S.C. 1997) (upholding the exclusion of proposed expert testimony under *Daubert* standard), *aff'd,* 150 F.3d 376 (4th Cir. 1998). Similarly, opinion testimony that is incomplete, conclusory, or speculative is not relevant or reliable evidence and must be excluded because it does not tend to make the existence of a material fact "more probable or less probable." *See* Fed. R. Evid. 401; *Daubert,* 509 U.S. at 590-94.

## ARGUMENT

The Federal Rules of Evidence require Plaintiffs' expert testimony to meet at least three threshold criteria before it can be admitted. First, Plaintiffs' experts must be sufficiently qualified as experts by reason of knowledge, skill, experience, training, or education to render their proffered opinions. Second, Plaintiffs' experts' opinions must be based upon scientific knowledge, i.e., they must be valid and reliable. Third, their opinions must be relevant to the facts of this case. Plaintiffs' experts fail to meet any of these threshold inquiries; -- they lack the requisite knowledge, skill, experience, training, or education to qualify as experts in employment discrimination and their opinions are wholly unreliable because they are conjectural and unsupported either by scientific analysis or factual and physical evidence in this case. Given their unreliability, it necessarily follows that Plaintiffs' experts' opinions are not relevant, would unnecessarily confuse the jury and prejudice NSB's defense, and must be excluded. The

*Daubert* factors listed above "are meant to be helpful, not definitive," *Id.* at 151, and "the court's evaluation is always a flexible one," *Oglesby v. General Motors Corp.,* 190 F.3d 244, 250 (4th Cir.1999). However, to admit Plaintiffs' expert opinions on racial discrimination and disparate impact goes too far. As the Fourth Circuit explained in *Oglesby,* "[a] reliable expert opinion must be based on scientific, technical or other specialized knowledge and not on belief or speculation; and inferences must be derived using scientific or other valid methods." *Id.* (citing *Daubert,* 509 U.S. at 592-93). To qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation − "good grounds," based on what is known. *Daubert,* 509 U.S. at 590. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified .... The statements constituting a scientific explanation must be capable of empirical test." *Id.* at 593.

In addition to the Rule 702 requirement of knowledge, skill, experience, training, or education, the expert's opinion must have a sufficient factual basis in order to be admissible. Trial courts are afforded broad discretion in determining the admissibility of expert testimony. *Nettles v. Proctor & Gamble Mfg. Co.*, 33 Fed.Appx. 670 (4th Cir. 2002)(applying South Carolina law)(citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). "A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation or is not based on data 'reasonably relied upon by experts in the particular field." *Brown v. Parker-Hannifin Corp.,* 919 F.2d 308 (5th Cir. 1990). "If the underlying data is so lacking in probative force and reliability that no reasonable expert could base an opinion on that data, then an opinion which rests entirely upon that data must be

excluded." *Viterbo v. Dow Chemical Co.,* 646 F.Supp. 1420, 1424 (E.D. Tex. 1986); *c.f., In Re Agent Orange Product Liability Litigation,* 611 F.Supp. 1223 (D.C.N.Y. 1985).

1. ***Drs. Bradley and Fox's Opinions and Testimony are the Product of Contrived, Speculative and Unreliable Principles and Methods which do not Apply Scientifically Accepted Principles to the Relevant Data.***

To be admissible, expert testimony must precisely apply valid scientific principles and theories to accurate and relevant data in reaching a conclusion. The mere recitation of facts, postulation of principles, and rendering of conclusions with little application and analysis renders an opinion conclusory and unreliable, especially when the unsupported conclusions are unique and contradict the underlying facts and science. *See Daubert,* 509 U.S. at 590-94: *see also Smith & Nephew, Inc.,* 259 F.3d at 201 (upholding the exclusion of "untested" and "unconventional" expert opinion). Drs. Bradley and Fox's proposed opinions and the bases of those opinions do not satisfy the requirements of Rule 702, as explained in *Daubert.*

(a)    *Dr. Bradley Is Not Qualified To Render Expert Opinions On Employment Discrimination.*

In the first prong of its analysis, the Court must determine whether Dr. Bradley is qualified by reason of knowledge, skill, experience, training, or education in the relevant subject areas (i.e., employment discrimination) before he may offer opinion at trial. Fed. R. Evid. 702. Before addressing whether the proffered expert testimony is reliable and relevant, courts must first inquire as to whether the proffered expert is "qualified to testify competently regarding the matters he intends to address." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002) (quoting *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 565 n.1 (11th Cir. 1998)). Close inspection of his qualifications reveals that Dr. Bradley does not possess the requisite knowledge, skill, experience, training or education to opine with regard to employment

discrimination, particularly in the context of internal promotions processes.  While Dr. Bradley has a terminal degree in statistics, he has spent the overwhelming majority of his career in the field of Biostatistics.[6]    Dr. Bradley has taken no academic courses on employment discrimination; he has not authored or published any research articles in employment discrimination; and he has never worked in the field of employment discrimination outside the litigation context.[7]  In fact, Dr. Bradley's sole experience in employment discrimination is in the litigation context, where he has primarily worked for the Wiggins, Childs law firm.[8]  The fact that Dr. Bradley has conducted virtually no employment/racial discrimination research outside the litigation context is a relevant consideration by this Court.  "That an expert testified based on research he has conducted independent of litigation provides important, objective proof that the research comports with the dictates of good science."  *Daubert,* 43 F.3d at 1317 (citing Peter W. Huber, *Galileo's Revenge:  Junk Science in the Courtroom* 206-09 (1991)).

Rule 702 provides that a *qualified person* may give opinion testimony if such testimony will aid the fact-finder "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  More than a general understanding of the concept at issue is necessary in order to qualify a person as an expert.  For example, in *Thomas J. Kline, Inc. v. Lorillard, Inc.,* the Fourth Circuit examined the trial court's admission of the testimony of Kline's only expert witness, Lilly Ann Gordon, on the issue of whether Lorillard's change in credit practices was unfair credit and price discrimination under § 13(a) of the Robinson-Patman Act. 878 F.2d 791, 799 (4th Cir. 1989).  Gordon admitted that she was not an economist, her highest level of education was a Master's degree in business administration and she had published only one article which did not relate to

---

[6]  *See* Declaration of Edwin L. Bradley ("Bradley Declaration"), p. 1, attached hereto as Exhibit 5; see also Curriculum Vitae of Edwin L. Bradley, pp. 1-4, attached hereto as Exhibit 6; see also Bradley Depo., pp. 23-24, attached hereto as Exhibit 3.

[7]  *See* footnote 6, *supra*.

[8]  *See* footnote 6, *supra*.

price discrimination, credit, or antitrust generally. She had mainly worked on analyses of companies' financial health and she had no personal experience in making credit decisions. *Id.* Absent any evidence of training or experience in the areas of antitrust or credit, the Court held that Gordon did not meet the Rule 702 requirements, as she did not possess "scientific, technical, or other specialized knowledge" that would assist the trier of fact. *Id.* at 800.

Likewise, Dr. Bradley does not possess "scientific, technical, or other specialized knowledge" that would assist the trier of fact in this action. His only qualifications outside litigation are that he has worked almost exclusively in the field of biostatistics for over thirty-eight years. Without education, training, or experience in employment discrimination, Dr. Bradley simply does not have sufficient expertise to conduct reliable analyses of complex hiring and promotions decisions. This fact is demonstrated by the numerous errors Dr. Bradley made in this case and in prior cases.[9] Further, an expert opinion which arises in a context independent of litigation is inherently constrained in the degree to which it can be tailored to serve a party's interests. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir. 1995); *see also Lauzon,* 270 F.3d at 692. In fact, Dr. Bradley's analysis in this case shows how susceptible to manipulation research is when it is done solely for litigation. This Court has already rejected Dr. Bradley's methodology which relies upon assumptions rather than actual data.[10] Because Dr. Bradley lacks field-specific expertise and uses faulty, biased methods, his opinions and testimony will not assist the trier of fact. This Court should therefore exclude all of Dr. Bradley's expert opinions.

---

[9] Dr. Bradley has an extensive history of being criticized and excluded by courts because of the shortcomings of his proposed expert analyses and opinions. *See, e.g., Anderson v. Westinghouse,* 406 F.3d 248 (4th Cir. 2005), *Yapp v. Union Pacific Railroad.,* 229 F.R.D. 608 (E.D. Mo. 2005), *Rhodes v. Cracker Barrel,* 213 F.R.D. 619 (N.D. Ga. 2003), *Davis v. Alabama Department. of Education.,* 768 F.Supp. 1471 (N.D. Ala. 1991).

[10] *See* Order Denying Motion to Certify Class, p. 9, docket entry #224.

Chas 490690v2

> (b)    *Dr. Fox Is Not Qualified To Render Expert Opinions On Employment Discrimination*.

Similarly, Dr. Fox's educational background and publications are almost exclusively in the field of biostatistics and medical research.[11]  The trial court must examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.  *City of Tuscaloosa*, 158 F.3d 565 n.1; *see also Siharath v. Sandoz Phamrs. Corp.*, 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001).  Although this requirement is construed liberally, even a liberal interpretation "does not mean that a witness is an expert simply because [s]he claims to be." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000); *see also Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706 (8th Cir. 2001) (reversing and remanding judgment upon jury verdict where district court erroneously allowed an expert witness "to testify beyond the scope of his expertise").

The fact that a proposed witness is an expert in one area does not *ipso facto* qualify [her] to testify as an expert in all related areas.  *See, e.g., Redman v. John D. Brush and Co.,* 111 F.3d 1174, 1179 (4th Cir. 1997) (metallurgic engineer was undoubtedly qualified to testify about the properties of metal, but he was not qualified to testify about industry standards for the manufacture of safes).  In fact, federal courts have held that an alleged expert can be precluded from testifying to a specific issue although that individual has expertise in the field as a whole. *See Everett v. Georgia-Pacific Corp.*, 949 F. Supp. 856, 857 (S.D. Ga. 1996) (holding that a witness who practiced in the area of family medicine and surgery was not qualified as an expert because he possessed no specialized knowledge or training in the field of toxicology; thus, an expert must, at a minimum, possess some specialized knowledge about the field) and *McLendon v. Georgia Kaolin Co.*, 841 F. Supp 415 (M.D. Ga. 1994) (excluding an expert's testimony

---

[11] *See* Curriculum Vitae of Liesl Mae Fox ("Fox CV"), attached hereto as Exhibit 7; see also Fox Depo., pp. 25-26, attached hereto as Exhibit 3.

because the expert had only taken the standard survey courses in the field but never attended a specific course or had detailed experience with the specifics at issue).

NSB does not contest Dr. Fox's general qualifications as a *biostatistician*. As the Fourth Circuit Court of Appeals has recognized, however, this does not qualify Dr. Fox to testify concerning racial discrimination in the context of NSB's internal promotions process. *See e.g. Oglesby*, 190 F.3d at 250 (testimony of concededly qualified mechanical engineer who attempted to apply "general engineering principles" to conclude automotive part was defective was not sufficiently reliable, did not properly draw on specialized knowledge, and was properly excluded). Specifically, Dr. Fox is not qualified to testify about the alleged internal promotions process at NSB. In fact, Dr. Fox's only training and/or experience regarding the complex issues of employment discrimination is by providing expert testimony through her employment at Dr. Bradley's consulting company, Quantitative Research Associates ("QRA").[12]

The Fourth Circuit has clearly held that experience in litigation, or experience as a professional expert, does not give one the requisite background to qualify as an expert. *Thomas J. Klein, Inc.* 878 F.2d 800 ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). Dr. Fox's only experience regarding employment discrimination is as a professional expert. Similarly, Dr. Fox's CV establishes that while in school, she did not specialize, major, or focus on any courses dealing with employment issues, specifically, racial discrimination or adverse impact in internal selection cases. Dr. Fox has no independent experience or qualifications that render her an "expert" in the specific area of employment discrimination and internal promotions processes. Thus, Plaintiffs cannot meet their burden of demonstrating that Dr. Fox is a qualified expert in employment discrimination

---

[12] Since earning her Ph. D in Biostatistics, Dr. Fox has worked for QRA as a statistical consultant primarily in the litigation context. See Fox Depo., p. 13, ll. 12-19, attached hereto as Exhibit 3.

and internal promotions processes.  Because Plaintiffs cannot meet their burden, this Court should exclude Dr. Fox's testimony because she fails the threshold inquiry under Federal Rule of Evidence 702 and *Daubert*.

>    (c)     *Drs. Bradley and Fox's Opinions Are Not the Product of Valid and Consistent Application of Recognized Statistical Principles and Methods.*

Assuming *arguendo*, the Court concludes that Drs. Bradley and Fox are qualified as experts in the field of employment discrimination and internal promotions process, the Court must make a second, more rigorous inquiry to determine whether Drs. Bradley and Fox's opinions are reliable.  This "gatekeeping" function of the District Court requires it to "make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.  Opinion testimony that is incomplete, conclusory, or speculative is not relevant or reliable evidence and must be excluded because it does not tend to make the existence of a material fact "more probable or less probable." *See* Fed. R. Evid. 401; *Daubert,* 509 U.S. at 590-94.

>    **(i)     Drs. Bradley and Fox Relied on Speculative Data**

Drs. Bradley and Fox's opinions are based on speculative data that is irrelevant to the issues in this case, and must therefore, be excluded under *Daubert* and Rule 702 as a matter of law.  Dr. Bradley admits that his statistics are based on incomplete data;[13] he went so far as declaring under penalty of perjury that reliable statistics could not be computed on any of the

---

[13] *See* Bradley Declaration at p. 3, ¶ 3, attached hereto as Exhibit 5.

Chas 490690v2

three standard forms of statistical analysis[14] from the information produced in this case,[15] and Dr. Fox agreed with this Declaration.[16]  Worthy of note is the fact that this Declaration was offered in support of Plaintiff's attempt to gain access to more data than the Court had deemed discoverable.[17]   When the Court denied the request for more data, Drs. Bradley and Fox proceeded to conduct the three standard forms of statistical analysis which they had earlier claimed could not be done[18] on the same data that Dr. Bradley had previously declared inadequate.[19]

Not to be deterred by their inability to conduct statistical analysis on the available data, Drs. Bradley and Fox used "proxy pools" to reach their conclusions.  The utilization analysis essentially involves a comparison of the distribution of the workforce at NSB to the surrounding labor market.[20]  As illustrated in the following excerpts of her testimony, Dr. Fox further admits that she resorted to external census figures even though she has absolutely no idea if *any* of the people in the surrounding labor market are even *eligible* to bid on the job postings at NSB:[21]

Q.     "Dr. Fox, how many people in the surrounding labor market are eligible to bid on the job postings at Nucor that you have analyzed?"
A.     "I don't know."
      ....

---

[14] *See* Bradley Declaration at p. 6, ¶5, identifying the three standard forms of statistical comparisons that are sometimes used to detect significant racial differences in promotions, transfers or compensation as (1) Population Representation Statistics; (2) Selection Rate Statistics; and (3) Multiple Regression Statistics, attached hereto as Exhibit 5.

[15] *See* Bradley Declaration at pp. 3-4, ¶3; pp. 6-8, ¶5; and p. 13, ¶14, attached hereto as Exhibit 5.

[16] *See* Fox Depo., pp. 57, ll. 3—18, attached hereto as Exhibit 3.

[17] *See* Declaration filed in support of Plaintiff's Objection and Appeal of Magistrate's Denial of Motion to Compel Discovery, docket entry #55, and see Defendants' Reply Memorandum (Docket entry #56).

[18] *See* Fox Depo., pp. 58, ll. 1—10, attached hereto as Exhibit 3.

[19] *See* Fox Depo., p. 57, l. 3 – p. 58 l. 10, attached hereto as Exhibit 3.

[20] *See* Fox Depo., pp. 75-77, attached hereto as Exhibit 3.

[21] *See* Fox Depo., p. 86, ll. 11-14; pp. 88-91; pp. 119-120, attached hereto as Exhibit 3.

Chas 490690v2

Q.    Okay.  But you would agree with me that from a bidding perspective, bidding on job postings, none of the people in the surrounding labor market are eligible to bid?

A.    Well, I guess they cannot come in and fill out an internal change of transfer from, no; application for transfer, they cant do that.  They fill out an application for hire.

Q.    Okay.  And they are just applying for a job at Nucor, right?

A.    Yes.

Q.    Now, what have you done to determine how many of those people in your surrounding labor market that you have identified are qualified for the jobs that are being posted that you have analyzed?

A.    I have not attempted to determine qualifications.

Q.    Made no attempt to determine qualifications?

A.    No.

....

Q.    All right.  Now, of this labor pool that  -- you have identified as 38.2 percent of the available labor pool being African-American; is that right?

A.    Yes.

Q.    Of those African-American – of those African-Americans in that labor pool, do you have any way of  knowing how many of them would be interested in applying for a job at Nucor?

A.    No, I do not.

Q.    Do you have any idea of how many of them would be qualified for a job at Nucor?

A.    No, I have not.

Q.    So you are just taking the raw numbers and you have not made any attempt to control for or to limit your analysis to those that might be expected to apply for a job at Nucor, have you?

A.    No, I have not.

....

Chas 490690v2

The standard method of proving discrimination in promotions is through a statistical analysis of the employer's promotions decisions.[22]  Dr. Fox does not dispute that for a valid internal promotions statistical analysis, the appropriate method would limit the analysis to those available for promotions; rather, she attempts to justify her use of external census figures based on a *single* promotion during the *entire* period at issue, for which an external applicant was selected.[23]  NSB maintained records of the name and race of all of the bidders on every promotion from late 2000 to the present.[24]  Thus, a valid statistical analysis, capable of peer review and testing, could have looked at all of the records from 2001 to the present and compared the promotion rates of African-American employees and others.[25]  Dr. Fox also admits that because the records for the promotions bidding for the period 1999-2000 were unavailable, there is no way for *anyone* to determine how such records would affect, *if at all*, the distribution of the applicants for promotions at NSB from 2000 going forward.[26]  The Fox/Bradley Expert Report goes on to conclude that even the bidding process at NSB is adversely affected by discrimination; however, Drs. Bradley and Fox never conducted any statistical analysis of the bidding process to determine adverse impact.[27]

---

[22] *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986);  *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 267-68  (D. Md. 2004); *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 471, n. 8 (D. Md. 2002);  *Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 553 (D. S.C. 2000).

[23] *See* Fox Depo., p. 83, l. 15 – p. 85, l. 8; p. 96 ll. 9-15, attached hereto as Exhibit 3.

[24] The lawsuit was filed in December of 2003, and there was no obligation on the part of NSB to maintain records over two years prior to that time, despite Plaintiffs' unfounded allegations that NSB improperly "destroyed" records. The EEOC Guidelines ask that employers keep records of adverse impact data—which Nucor did for over two years.  Plaintiffs complain that Nucor did not keep them for four years, but there is no such requirement under the EEOC Guidelines.  Nevertheless, the EEOC Guidelines are not the law nor are they binding on this Court.  *E.E.O.C. v. E.I. DuPont de Nemours & Co.,* 623 F.Supp. 15, 17 (D.C. N.C. 1985).

[25] As noted above, (footnote 10), this Court has already rejected Drs. Fox and Bradley's reliance upon these proxy pools.  "Statistics based upon actual data is more probative than statistics based on assumptions.  Consequently, the Court relies on statistics resulting from an analysis of this data."  Order Denying Class Certification, p. 9.

[26] *See* Fox Depo., p. 133, l. 5 to p. 134, l. 3, attached hereto as Exhibit 3.

[27] *See* Fox Depo., p. 111, ll. 2-13, attached hereto as Exhibit 3.

Chas 490690v2

Accordingly, the Court should not allow Dr. Fox or Bradley to offer their "expert" opinions in this case because they rely upon speculative assumptions rather than available data.

### (ii)    Drs. Bradley and Fox's Opinions are not Based on Reliable Data

The next *Daubert* factor – the known or potential error rate – goes to the heart of the "reliability" question. The speculative nature of the "data" relied upon by Drs. Bradley and Fox yields conclusions that are inherently unreliable. Drs. Bradley and Fox chose to create data for the period of 1999-2000 and completely ignored data from 2003 to the present[28] because (1) analysis of the actual promotions data shows no adverse impact in the internal selection process at NSB; and (2) the contrived data is skewed to achieve Plaintiffs' desired results.

Here, there is nothing that enables the Court to determine how reliable Drs. Bradley and Fox's opinions and conclusions are, or if their Expert Report is reliable at all. A review of the record leads only to the conclusion that Drs. Bradley and Fox did not perform any type of scientifically reliable, generally accepted evaluation of the alleged discrimination in internal promotions at NSB. Rather than conducting standardized statistical analysis, they created this data by pulling twenty-seven "change of status" forms from the employee personnel files provided by NSB through discovery.[29] These forms admittedly do not indicate whether any African-American actually bid for the jobs in question.[30]

Nor did Drs Bradley and Fox follow any widely accepted methods for determining adverse impact in an internal promotions case. Their Expert Report is devoid of data showing a known error rate and thus, the potential for an unreliable conclusion is simply too high. *See, e.g.,*

---

[28] *See* Fox Depo., p. 194, l. 14—p. 203, l. 20, attached hereto as Exhibit 3; see also Welch Report, pp. 5-6, attached hereto as Exhibit 4.
[29] *See* Fox Depo., p. 121, l. 22—p. 122, l. 10, attached hereto as Exhibit 3.
[30] *Id*.

*United States v. Fitzgerald*, 80 Fed. Appx. 857, 861 (4th Cir. 2003) (failure to present evidence of a known rate of error prevents a party from satisfying the *Daubert* test); *United States v. Bynum*, 3 F.3d 769, 773 (4th Cir. 1993) (trial courts should consider whether there is evidence of a known rate of error for an expert's methodology), *cert. denied*, 510 U.S. 1132 (1994).

In the absence of testing with a valid scientific connection to the situation in dispute, Drs. Bradley and Fox cannot be considered to have met the *Daubert* "reliable testing" prong. *See, e.g., Arroyo v. Ford Motor Co.*, 59 Fed. Appx. 524, 526 (4th Cir. 2003) (affirming the trial court's ruling to exclude expert testimony because the testing conditions deviated from those at the time of the accident). Drs. Bradley and Fox's opinions are not sufficiently reliable to pass muster under Rule 702, and the Court should grant the Defendants' motion. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3rd Cir. 2000) ("An expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation."). More importantly, Dr. Fox admits that even when she attempted to control for training and discipline, the statistical analyses show no evidence of discrimination in the internal promotions process at Nucor for the years 2001 through 2006.[31]

### (iii)    Drs. Bradley and Fox's Methods Fail to Adhere to Recognized and Tested Statistical Principles.

The Fourth Circuit has consistently upheld the exclusion of expert testimony that relies on comparisons that are irrelevant to the claims and facts at issue. *Anderson v. Westinghouse Savannah River Co*. 406 F.3d 248, 263 (4th Cir. 2005):

> "We are of opinion and hold that the district court did not abuse its discretion in excluding Dr. Bradley's testimony based on his statistical analysis. The analysis was based on comparisons that were not relevant to Miss Anderson's claims. "The

---

[31] *See* Fox Depo., p. 164 l. 14 —p. 165, l. 11; p. 167, l. 13 – p.170, l. 3; p. 202, l. 7 – p. 203, l. 20, attached hereto as Exhibit 3.

usefulness of statistics depends on the surrounding facts and circumstances." *Carter v. Ball,* 33 F.3d 450, 456 (4th Cir.1994) (citing *Int'l Broth. of Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977))."

As in *Anderson*, Drs. Bradley and Fox rely on external census data in an internal promotions case without attempting to show not only whether the African-Americans in the surrounding labor market are qualified and/or eligible to bid for a job at NSB, but also whether they would be even interested in working at NSB.

Drs. Bradley and Fox's creation of data for the 1999-2000 period and reliance upon external census figures is inconsistent with recognized and tested statistical principles under analogous facts. There is no dispute that an analysis of existing NSB promotions records from 2001-2006 demonstrates that there is no statistical evidence of adverse impact discrimination against African-Americans in promotions decisions.[32] In addition, even if the post-lawsuit postings are ignored, the existing promotions records from 2001-2003 also show no statistically significant adverse impact.[33]

In *Herold v. Hajoca Corp.,* 864 F.2d 317, 321-22 (4th Cir.1988), the court upheld the district court's ruling to exclude statistical evidence that did not compare the plaintiff with others who were similarly situated to the plaintiff. In *Herold,* plaintiff sought to introduce statistical evidence derived from the number of employees terminated in the company's entire mid-Atlantic region in order to establish a violation of the ADEA. The Fourth Circuit upheld the district court's refusal to allow such "region-wide statistics" to be admitted. Instead, the court permitted the plaintiff to introduce statistical evidence derived only from the terminations of employees at the defendant's Staunton branch, where the plaintiff had been employed. 864 F.2d at 321-22.

---

[32] *See* Welch Report, pp. 2-3 ("I find no evidence that the process used to fill vacancies in production-related positions at NSB is related to race."), attached hereto as Exhibit 4; see also Fox Depo, p. 194, ll. 14 – 22, attached hereto as Exhibit 3.
[33] *See* Fox Depo., p. 166, l. 4 – p. 170, l. 3, attached hereto as Exhibit 3.

Chas 490690v2

Likewise, under the *Anderson* analysis, Drs. Bradley and Fox's testimony and conclusions are deficient because they rely on an illogical and irrelevant comparison involving an inflated pool of applicants who cannot be shown to be eligible for the jobs at issue.  "An inflated pool can undermine the validity of a statistical study to determine imbalances."  406 F.3d 262.  Because the straightforward analysis of the statistical data in this case demonstrates that no class discrimination exists, Plaintiffs' experts reached out to employ invalid criteria inconsistent with accepted statistical principles and incapable of peer review or testing, in order to justify their faulty assumption.

The Fourth Circuit has joined the overwhelming majority of federal courts in holding that the testing of a scientific theory or hypothesis is a virtual prerequisite to its admissibility.[34]  Drs. Bradley and Fox's adverse impact and underutilization opinions are based solely on speculation unsupported by any reliance on recognized publications, or testing in cases dealing with internal promotions analysis.  As a result, Drs. Bradley and Fox's opinions and conclusions cannot withstand even the most forgiving scrutiny under the rules governing the admissibility of expert testimony.  Consequently, these *Daubert* factors weigh against Drs Bradley and Fox's opinions and support exclusion.  *See, e.g.*, *Fraley v. Stoddard*, 73 F. Supp.2d 642, 647 (S.D. W.Va. 1999) (failure by an expert to test his theory pursuant to accepted scientific principles leads to exclusion under the *Daubert* test).

>    (d)     Drs. Bradley and Fox's Opinions Are Not Relevant To the Facts of This Case.

---

[34] *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001) (affirming exclusion of physician in pedicle screw litigation who had never implanted a pedicle screw device, but rather based his opinions on subjective beliefs instead of valid scientific inquiry); *Oglesby v. General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999) (affirming exclusion of an expert who had examined and photographed an allegedly defective hose, but who failed to analyze or test the part, and had not performed any calculations to support his views; *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) (excluding expert who "concededly never performed the recommended physical tests"); *Phelan v. Synths (U.S.A.)*, 2002 WL 1058900 (4th Cir. 2002) (affirming exclusion of expert "[b]ecause he did not conduct any tests nor perform any calculations regarding the [product] in question")

As set forth above, Drs. Bradley and Fox's reliance upon the "change of status" forms to create an inference of disparate impact is irrelevant here because these forms are simply a company record which documents *any* employee's change of status, whether the employee was promoted, demoted, received a standard pay increase, or was transferred.[35]   However, these forms do not indicate whether any African-American actually bid for the jobs in question.[36]  As Dr. Fox testified, it is impossible to determine whether any of the 27 job selections represented in the "change of status" forms would even fall within the Court's definition of "similarly situated."

> **Question**: Okay.  How many of these job selections [of the pre-2001 promotion-selection data] involved—these 27 job selections involved an African-American actually bidding on a job?
>
> **Answer**: As least one.
>
> **Question**:  Other than the one, how many involved?
>
> **Answer**: I don't know.
>
> Q.      You don't know.  You have no way of knowing that?
>
> A.      No.
>
> Q.      Okay.  Is not the definition of similarly situated, does that not also include a job on which an African-American bid?
>
> A.      That was the Court's Order, yes.
>
> Q.      Okay.  So have you made any attempt in your analysis of these 27 to bring them within the Court's definition of same or similar?
>
> A.      Those were destroyed.  Its not possible to do that.
>
> Q.      Okay.  So have not?
>
> A.      I cannot.  They were destroyed.

---

[35] Another reason why Plaintiffs' pre-2001 data is unreliable is due to the nature of change of status forms.  They are not exclusively promotions records.  Many of the change of status forms used by Plaintiffs in their calculation of pre-2001 data may actually reflect a transfer or demotion.
[36] *Id*.

Deposition of Liesl Fox, p. 123, l. 5 to p. 124, l. 7.

Without knowing if the job at issue was open for bidding or whether African-Americans bid on the job if it was, the data obtained from the twenty-seven job changes is irrelevant to a claim of discrimination in promotions. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003) (in order to establish a *prima facie* case of discrimination in promotions, Plaintiffs are required to show they applied for the position in question). Thus, the contrived pre-2001 job selection data cannot answer the essential question of this case—whether African-American employees were denied promotion due to discrimination. *Id.*

Similarly, the comparison between external census data and internal promotions data is irrelevant to a promotions claim because the only people who are eligible for *promotions* within a company are the current employees of the company—not people off the street. Likewise, the only individuals eligible to bid on open jobs at NSB are current employees[37]—not the general population from the surrounding counties. *U.S. v. Com. of Va.*, 454 F. Supp. 1077 (E.D. Va. 1978) (The appropriate comparison is not between the relevant workforce and the number of minorities actually employed, but rather between the available workforce and the number of minorities offered employment). The comparison of NSB's internal promotions selections with the demographic makeup of surrounding counties is immaterial to Plaintiffs' allegation that African-American employees are discriminated against in promotions. The only reason it is presented here is due to Plaintiffs' obvious lack of statistical evidence of adverse impact. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Rule 702 requires a valid connection between the expert's testimony and the pertinent inquiries before the court. There is no such connection here, and

---

[37]*See* Welch Report, p. 6, attached hereto as Exhibit 4.

therefore, Drs. Bradley and Fox's opinions and conclusions are irrelevant to the analysis of discrimination in the internal selection process at NSB and must therefore be excluded.

>    (e)    *Drs. Bradley and Fox's Opinions and Conclusions Must be Excluded Pursuant to FRE 403.*

In addition to being inadmissible under Rule 702 as interpreted in *Daubert*, Drs. Bradley and Fox's proposed opinions and testimony are also inadmissible under Rule 403 because they have no probative value, and a significant probability of creating confusion and unfair prejudice exists. Rule 403 allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert,* 509 U.S. at 595. Drs. Bradley and Fox's opinions are irrelevant to the issues in this case; but even if they were relevant, a significant likelihood exists that their opinions will confuse and mislead the factfinder. The balancing of possible prejudice with probative value is especially critical with proposed expert evidence because of the deference jurors give such testimony and the difficulty in evaluating its accuracy. *Id.* (internal citations omitted). When expert evidence is based upon unreliable methodology and errors, as it is in this case, then the opinions are inadmissible under Rule 403. *See e.g., Recreational Developments of Phoenix, Inc., v. City of Phoenix,* 220 F.Supp.2d 1054, 1064 (D. Az. 2002). Because the likelihood of confusion and misleading the jury far outweighs any probative value of Dr. Bradley's opinions, this Court should exclude them.

*        *        *        *        *        *

**2.  Dr. Buckley's Opinions and Testimony are Based on Incomplete Information and are Outside His Area of Expertise.**

Plaintiffs also intend to offer Michael R. Buckley, Ph.D. at trial to provide expert opinions in the field of industrial and organizational psychology regarding whether the selection

procedures utilized by NSB satisfy "professional standards" and the *Uniform Guidelines on Employee Selection Procedures* (29 CFR 1607, hereinafter "Uniform Guidelines") and to offer opinions regarding whether the selection processes by NSB are demonstrably job-related and competently conducted.[38]

This Court should exclude all of Dr. Buckley's opinions. Plaintiffs cannot establish: (1) that Dr. Buckley is testifying within the identified scope of his expertise; (2) that Dr. Buckley's opinions are based upon complete and sufficient data; or (3) that Dr. Buckley's opinions are relevant to the issues of this case. Because Plaintiffs cannot meet their burden of proving the admissibility of Dr. Buckley's expert opinions, this Court should exclude those opinions.

(a)    *Dr. Buckley's Opinions are Outside the Scope of his Expertise.*

Dr. Buckley holds a terminal degree in Industrial and Organizational Psychology and serves as Director of the Division of Management at the University of Oklahoma, where he is a member of a committee that makes suggestions for hiring decisions made by the university's central administration department.[39] Dr. Buckley's primary duties are as a professor and researcher in human resources management issues[40] and teaching principles in management to junior level classes.[41] Dr. Buckley also undertakes consulting work, which constitutes approximately ten percent (10%) of his work component and takes up two weeks of his yearly work time.[42] His self-described area of expertise is "knowing the human resource function."[43]

---

[38] *See* Preliminary Expert Report of Michael R. Buckley: The Job-Relatedness of the Selection Procedures at Issue in *Brown, et al v. Nucor Corporation and Nucor Steel-Berkeley*, ("Buckley Report"), p.1, attached hereto as Exhibit 8.

[39] *See* the Deposition of Michael R. Buckley ("Buckley Depo."), p. 52, l. 24 – p. 53, l. 14, attached hereto as Exhibit 9.

[40] *See* Buckley Report, p.1, attached hereto as Exhibit 8.

[41] *See* Buckley Depo., p. 153, ll. 1-3, attached hereto as Exhibit 9.

[42] *See* Buckley Depo., p. 73, ll. 12-25; p. 151, ll. 18-24, attached hereto as Exhibit 9.

[43] *See* Buckley Depo., p. 58, l. 23, attached hereto as Exhibit 9.

Chas 490690v2

His only experience in conducting validation studies is an unsuccessful research project looking at concurrent validation, "within the past ten years."[44]

Dr. Buckley's purported "expertise" in employment discrimination litigation is based mainly from his teaching responsibilities to make his students aware of issues such as adverse impact and affirmative action.[45]  Dr. Buckley has himself, never conducted any actual adverse impact calculations.[46] Dr. Buckley's task in this case was to render expert opinions about whether NSB's selection procedures complied with the applicable standards and guidelines.[47] These opinions, presumably, would be based upon Dr. Buckley's education, training, and experience in the field of industrial and organizational psychology.  Dr. Buckley has however, never testified regarding a validation study, adverse impact or the job relatedness of selection procedures.[48]  By his own admissions, Dr. Buckley is only "somewhat" familiar  with the promotions process in the different departments at NSB.[49]  Further, Dr. Buckley has never analyzed selection criteria for an industrial-type job[50] and neither has he conducted any job analyses for industrial clients or steel clients.[51]

Dr. Buckley does not have the requisite "knowledge, skill, experience or training" to offer an expert opinion on statistical analysis.  His expertise is in industrial and organizational psychology, and expertise in one area does not qualify Dr. Buckley as an expert in other areas. *Redman* 111 F.3d 1179; *see also Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382 (5th Cir.1996),

---

[44] *See* Buckley Depo., p. 59, l. 3 – p. 60, l. 4, attached hereto as Exhibit 9.
[45] *See* Buckley Depo., p. 74, ll. 6-14, attached hereto as Exhibit 9.
[46] *See* Buckley Depo., p. 75, ll. 4-16., attached hereto as Exhibit 9.
[47] *See* Buckley Report, p. 1, attached hereto as Exhibit 8.
[48] *See* Buckley Depo., p. 32, ll. 1-11, attached hereto as Exhibit 9.
[49] *See* Buckley Depo., p. 37, l. 24 – p. 38 ll. 2, attached hereto as Exhibit 9.
[50] *See* Buckley Depo., p. 131, ll. 7-19, attached hereto as Exhibit 9.
[51] *See* Buckley Depo., p. 41, l. 10 – p.44, l. 18; p. 132, ll. 3-8, attached hereto as Exhibit 9.

Chas 490690v2

and *Kumho Tire Co.,* 526 U.S. at 141 (a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise).

> (b)     *Dr. Buckley Relies Upon Incomplete Data.*

Dr. Buckley admits that his opinion that the company's selection methods are not valid is based on incomplete information.[52]  He further admits that if he had more information, it is possible that he would have found NSB's selection methods to be valid.[53]  His opinions are based entirely on his review of the Complaint and deposition transcripts of some of the witnesses in this case.[54]  He did not, however, review any NSB job descriptions;[55] neither did he perform his own independent analysis of the specific jobs at issue[56] in order to determine compliance with the Uniform Guidelines and job relatedness of NSB's selection methods.

Every expert must base his or her opinion on facts sufficient to form an adequate foundation for the opinion.  *Hines v. Consolidated Rail Corp.,* 926 F.2d 262 (3rd Cir. 1991).  If an opinion lacks that foundation, then it offers no expert assistance to the jury, and should be excluded.  Moreover, the opinion's lack of reliable support may render it more prejudicial than probative, making it inadmissible under Rule 403.  *Barrel of Fun Inc. v. State Farm Fire & Casualty Co.,* 739 F.2d 1028, 1035 (5th Cir. 1984).  "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."  *Vitterbo v. Dow Chemical Co.,* 826 F.2d 420, 424 (5th Cir. 1987).  For example, the *Oglesby* Court relying, in part, upon its earlier decision in *Alevromagiros v. Hechinger Co.,* 993 F.2d 417 (4th Cir. 1993), affirmed exclusion of an expert who, like Dr. Buckley, "never performed the recommended

---

[52] *See* Buckley Depo., p. 47, ll. 15-20; p. 49, ll. 5-12, attached hereto as Exhibit 9.
[53] *See* Buckley Depo., p. 49, ll. 19-22, attached hereto as Exhibit 9.
[54] *See* Buckley Report, "Source Documents" page within unnumbered Report, attached hereto as Exhibit 8; see also Buckley Depo., p. 18, ll. 8-17, attached hereto as Exhibit 9.
[55] *See* Buckley Depo., p. 77, ll. 12-19, attached hereto as Exhibit 9.
[56] *See* Buckley Depo., p. 87, ll. 17-21, attached hereto as Exhibit 9.

Chas 490690v2

physical tests to determine whether [the product at issue] conformed to industry standards, testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers." *Alevromagiros*, 993 F.2d at 421; *see also Buckman v. Bombadier Co.*, 893 F.Supp. 547, 557 (E.D.N.C. 1995) (excluding expert who had done no testing on the product design in practice, thus rendering his opinion "[a]n untested 'guess' at a safer design. . . .[T]he type of hypothetical science *Daubert* sought to exclude").

Dr. Buckley's concession that he had insufficient information to determine whether Nucor's selection procedures are invalid render his opinions about the validity of their procedures *per se* unreliable.  This Court should exclude them.

#### (c)     Dr. Buckley's Opinions are not Relevant to the Facts of this Case.

Finally, Dr. Buckley's conclusions that NSB's selection procedures are not validated are irrelevant and should be excluded on this basis.  Concededly, Dr. Buckley did not conduct any scientific study to support his contentions;[57] neither did he attempt to statistically determine if the selection procedures have an adverse impact on African Americans seeking promotions at NSB.[58]  As all of the experts in this case have noted, the *Uniform Guidelines* require selection procedures to be validated only if those selection procedures have an adverse impact.  For all of the reasons set forth above regarding the inadmissibility of the opinions of Drs. Fox and Bradley, Dr. Buckley has no basis for assuming that there is an adverse impact in this case to make any validation analysis relevant to the proceedings.  Accordingly, Dr. Buckley's  opinions challenging the validity of NSB's selection procedures have no bearing on this case.  Dr. Buckley's opinions are irrelevant, and are therefore inadmissible.

---

[57] *See* Buckley Depo., p. 45, ll. 10 – 12, attached hereto as Exhibit 9.
[58] *See* Buckley Depo., p. 90, ll. 10-12; p. 137, ll. 16 – 19, attached hereto as Exhibit 9.

Chas 490690v2

## CONCLUSION

Plaintiffs cannot meet their burden of establishing the admissibility of any of their expert witnesses. Defendants therefore request that this Court exclude Dr. Bradley, Dr. Fox and Dr. Buckley as expert witnesses in this case, and strike all their reports.

Respectfully submitted,

January 29, 2007

By: s/John S. Wilkerson, III
John S. Wilkerson, III
Federal ID# 4657
Turner, Padget, Graham & Laney, PA
P.O. Box 22129
Gateway Center, Suite 200
40 Calhoun Street
Charleston, SC 29401
Telephone: (843) 576-2801
Facsimile: (843) 577-1649

Cary A. Farris
Federal ID# 25150
Alaniz & Schraeder, LLP
2500 City West Boulevard, Suite 1000
Houston, TX 77042
Telephone: (281) 833-2200
Facsimile: (281) 833-2240

ATTORNEYS FOR DEFENDANTS NUCOR
CORPORATION AND NUCOR STEEL BERKELEY

Chas 490690v2